FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 22, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| THOMAS S.,<br><br>               Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>               Defendant. | NO:  2:20-CV-00169-FVS<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary judgment.  ECF Nos. 16 and 17.  This matter was submitted for consideration without oral argument.  The Plaintiff is represented by Attorney Chad L. Hatfield. The Defendant is represented by Special Assistant United States Attorney Shata L. Stucky.  The Court has reviewed the administrative record and the parties' completed briefing and is fully informed.  For the reasons discussed below, the court **GRANTS** Plaintiff's Motion for Summary Judgment, ECF No. 16, and **DENIES** Defendant's Motion for Summary Judgment, ECF No. 17.

**JURISDICTION**

Plaintiff Thomas S. protectively filed for supplemental security income on June 20, 2017, alleging an onset date of January 1, 2017.  Tr. 158-71.  Benefits were denied initially, Tr. 96-99, and upon reconsideration, Tr. 101-04.  Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on February 8, 2019.  Tr. 36-66.  Plaintiff was represented by counsel and testified at the hearing.  *Id*.  The ALJ denied benefits, Tr. 15-34, and the Appeals Council denied review.  Tr. 1.  The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

**BACKGROUND**

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner.  Only the most pertinent facts are summarized here.

Plaintiff was 36 years old at the time of the hearing.  *See* Tr. 158.  He completed 10th grade.  Tr. 185.  He lives by himself in a trailer on his mother's property.  Tr. 41. Plaintiff has no past relevant work.  Tr. 57.  Plaintiff testified that he was recently able to work only seven and a half hours before he was fired because he had a hard time talking to his supervisor, and "they [didn't] understand what [he] was doing."  Tr. 44-45.

Plaintiff testified that he has a hard time interacting with others, including authority figures, and cannot handle feedback from customers, supervisors, or colleagues.  Tr. 42.  He does not trust mental health professionals, doctors, mechanics, or "anybody."  Tr. 42, 44-47, 49.  Plaintiff reported that he has pain in

ORDER ~ 2

his low back that travels down his legs, and causes them to go completely numb and "give out"; restless leg syndrome; pain in his neck and shoulders that radiates down his arms; decreased sensation in his hands; difficulty concentrating and remembering; and he sometimes hears voices.  Tr. 48-53.  He has to lie down 70 percent of the day or more because of his pain, for an hour to an hour and a half at a time. Tr. 54-55.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the

ORDER ~ 3

1   record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

2   court "may not reverse an ALJ's decision on account of an error that is harmless."

3   *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate

4   nondisability determination."  *Id*. at 1115 (quotation and citation omitted).  The

5   party appealing the ALJ's decision generally bears the burden of establishing that

6   it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

7                    **FIVE–STEP SEQUENTIAL EVALUATION PROCESS**

8        A claimant must satisfy two conditions to be considered "disabled" within

9   the meaning of the Social Security Act.  First, the claimant must be "unable to

10   engage in any substantial gainful activity by reason of any medically determinable

11   physical or mental impairment which can be expected to result in death or which

12   has lasted or can be expected to last for a continuous period of not less than twelve

13   months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be

14   "of such severity that he is not only unable to do his previous work[,] but cannot,

15   considering his age, education, and work experience, engage in any other kind of

16   substantial gainful work which exists in the national economy."  42 U.S.C. §

17   1382c(a)(3)(B).

18        The Commissioner has established a five-step sequential analysis to

19   determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

20   416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

21   activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

ORDER ~ 5

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

# ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since June 20, 2017, the application date.  Tr. 20.  At step two, the ALJ found Plaintiff has the following severe impairments: lumbar degenerative disc disease, and cervical degenerative disc disease.  Tr. 20.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 21.  The ALJ then found that Plaintiff has the RFC

> to perform light work as defined in 20 CFR 416.967(b) with the following limitations.  The claimant would need a sit/stand option, which was defined as the option to change from a standing position to a sitting position, or vice-versa, every 30 minutes, for up to 5 minutes while remaining at the workstation.  The claimant can never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs; occasionally stoop; rarely crouch, which was defined as less than 15 percent of the workday; and never kneel or crawl.  The claimant can perform occasional overhead reaching bilaterally, and frequent handling and fingering bilaterally.  Further, the claimant should avoid use of moving or dangerous machinery; avoid exposure to unprotected heights, and he cannot drive motor vehicles at work.  The claimant would need work that consists of only simple, routine and repetitive tasks that require minimal reading and writing skills.  Finally, he needs work that requires no more than brief and superficial interaction with the public and coworkers, and occasional interaction with supervisors.

Tr. 22.  At step four, the ALJ found that Plaintiff has no past relevant work.  Tr. 28.  At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: electronics worker and marker.  Tr. 29.  On that basis, the ALJ concluded that Plaintiff has not been under a disability,

1  as defined in the Social Security Act, since June 20, 2017, the date the application

2  was filed.  Tr. 29.

3                                              **ISSUES**

4          Plaintiff seeks judicial review of the Commissioner's final decision denying

5  him supplemental security income benefits under Title XVI of the Social Security

6  Act.  ECF No. 16.  Plaintiff raises the following issues for this Court's review:

7          1.  Whether the ALJ improperly discredited Plaintiff's symptom claims;

8          2.  Whether the ALJ properly weighed the medical opinion evidence;

9          3.  Whether the ALJ erred at step two;

10         4.  Whether the ALJ erred at step three; and

11         5.  Whether the ALJ erred at step five.

12                                          **DISCUSSION**

13  **A. Plaintiff's Symptom Claims**

14         An ALJ engages in a two-step analysis when evaluating a claimant's

15  testimony regarding subjective pain or symptoms.  "First, the ALJ must determine

16  whether there is objective medical evidence of an underlying impairment which

17  could reasonably be expected to produce the pain or other symptoms alleged."

18  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not

19  required to show that her impairment could reasonably be expected to cause the

20  severity of the symptom he has alleged; he need only show that it could reasonably

21  have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591

(9th Cir. 2009) (internal quotation marks omitted).

ORDER ~ 8

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons. Tr. 23.

First, the ALJ found that Plaintiff's "allegations regarding his physical and mental conditions are inconsistent with his activities of daily living and reported work activity." Tr. 26. A claimant need not be utterly incapacitated in order to be eligible for benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also*

*Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) ("the mere fact that a plaintiff has carried on certain activities . . . does not in any way detract from her credibility as to her overall disability.").  Regardless, even where daily activities "suggest some difficulty functioning, they may be grounds for discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.  Here, in support of this finding, the ALJ cites evidence that Plaintiff "has sought medical treatment for a 3-wheeler injury, an injury that occurred while loading a couch into a trailer, several injuries while working on vehicles (minor burn, insect bite, back injury while lifting transmission from a truck), and a back injury while climbing a ladder.  Of further significance, medical records from December 12, 2018, indicate that [Plaintiff] is working fulltime as a tattoo artist and mechanic." Tr. 26 (citing Tr. 367, 374, 379, 384, 387, 390).  The ALJ concludes that these activities are inconsistent with Plaintiff's testimony that he "only leaves his trailer when he has to prepare meals and go to the bathroom." Tr. 26.

As an initial matter, the Court notes there is no evidence that the "activities" cited by the ALJ were performed on a daily basis, or transferable to a work environment; rather, they are isolated incidents that do not conflict with Plaintiff's symptom testimony. *See Orn*, 495 F.3d at 639 (daily activities may be "grounds for [rejecting symptom claims] 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'").  Moreover, in making a credibility finding, the

ORDER ~ 10

ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari,* 246 F.3d 1195, 1208 (9th Cir. 2001). Here, it is unclear how the emergency treatment notes cited by the ALJ, that exclusively document acute physical injuries, is inconsistent with Plaintiff's testimony that he cannot get along with people. Tr. 43-44. In addition, the ALJ fails to consider how evidence of Plaintiff's injuries sustained during isolated instances of working on his vehicle is inconsistent with his testimony that he works on his car "every once in a while, I guess – couple times a year"; refuses to take his car to a mechanic because he does not trust other people to work on his car; and "[i]f you want something done, you got to do it right yourself." Tr. 46-47, 51-53.

Finally, the ALJ cites a single medical record that references Plaintiff's report of working fulltime as a mechanic and a tattoo artist; however, the ALJ fails to address Plaintiff's testimony that he was fired from a job after only seven and a half hours, he was unable to get along with his friend and work as a tattoo artist because he "could not deal with feedback," and he worked on his own car because he did not trust mechanics. Tr. 44-47. Moreover, the ALJ found Plaintiff has no past relevant work, and the Court notes the certified earnings records show no earnings during the relevant adjudicatory period, and nominal earnings prior to that period. Tr. 28, 178. For all of these reasons, the ALJ's reliance on "inconsistencies" between Plaintiff's activities of "daily living" and reported work activity does not rise to the level of a clear and convincing reason, supported by

ORDER ~ 11

substantial evidence, to discredit the entirety of Plaintiff's symptom claims.  In particular, in light of the need to reconsider the mental health opinions, as discussed in detail above, the ALJ must reconsider Plaintiff's testimony regarding his inability to get along with people, along with all of his claimed impairments, on remand.

Second, the ALJ found the record "has evidence of possible misuse of opiate medications and drug seeking behaviors, which suggests that his pain complaints are not as severe as alleged."  Tr. 26.  Drug seeking behavior can be a clear and convincing reason to discount a claimant's symptom claims.  *See Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001).  However, the ALJ based this finding on a single February 2018 drug screen that was "inappropriate," and a general observation that "[s]hortly thereafter, [Plaintiff] started presenting in the emergency room for various acute injuries where he was prescribed pain medications including oxycodone and tramadol."  Tr. 26.  However, the ALJ fails to cite any evidence from a treating provider explicitly observing that Plaintiff was "possibly" engaged in drug-seeking behavior.  Instead, the record contains ongoing evidence from before and after February 2018 indicating that while Plaintiff was not being prescribed controlled substances based on the single failed drug screen, he was still being prescribed pain medication, and there was no evidence of any subsequent inappropriate drug screens.  *See, e.g.*, Tr. 274 (2017 yearly UDS check was appropriate for Oxys), 373 (November 2018 "given pain meds on trial basis, but sternly warned about 'noncompliance' [prior UDS issue, but last recheck

ORDER ~ 12

appropriate]").  Thus, this single notation of an "inappropriate" drug screen, followed by emergency prescription of pain medication for acute injuries, without any notation of drug seeking behavior, does not rise to the level of substantial evidence to support rejecting Plaintiff's symptom claims based on "possible" drug-seeking behavior.  This was not a clear and convincing reason to discount Plaintiff's symptom claims.

Third, and finally, the ALJ found Plaintiff's statements are inconsistent with the objective findings and other evidence of record.  Tr. 26.  The medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).  Here, the ALJ found that if Plaintiff's "pain were as severe as alleged, one would expect that his reported limitations would be reproduced on physical examination.  Although the orthopedic examination showed decreased sensation and reduced strength, primarily in left upper and lower extremities, routine office visits as well as emergency room visits generally demonstrate normal neurological findings."  Tr. 26.  In support of this finding, the ALJ cited examination findings that Plaintiff was alert and oriented, in no acute distress, cranial nerves intact, motor examination 5/5 of the extremities, deep tendon reflexes 2+ and equal, Babinski's downgoing bilaterally, normal finger-nose, normal sensation to touch of extremities in May 2018, negative straight leg raises in two emergency room visits, normal attention span and ability to concentrate, able to name objects and repeat

phrases with appropriate fund of knowledge.  Tr. 26 (citing Tr. 261, 268, 272-73, 276, 280, 291, 296, 300, 362, 369, 372, 376, 388).

Plaintiff argues that the record contains remarkable examination findings, such as decreased motion of the spine at all levels, decreased motor strength, decreased sensation, positive bilateral straight leg raise tests both supine and sitting, and impaired straight-line walking.  ECF No. 16 at 19 (citing Tr. 252, 266, 359, 362, 367).  The record also includes MRI findings of L3-4 disc bulge and L5-S1 small disc protrusion, paracentral/foraminal disc protrusion at C6-7, moderate left foraminal stenosis with disc protrusion contacting the left C7 nerve root, mild C3-4 annular disc bulge, bilateral feet numbness, tenderness to palpation in low back and neck, weakness, and difficulty gripping.  Tr. 254, 345, 347, 364.  Finally, while not considered by the ALJ as part of the symptom claim analysis, the record contains clinical findings of chronic active-independent interpersonal style, odd/peculiar presentation, reported mild perceptual anomalies, magical thinking and social paranoia; and mental status examination findings of illogical speech, magical thinking and paranoid themes, vague/questionable responses, moderately depressed mood and constricted affect, thought process and content not within normal limits, memory not within normal limits, and insight and judgment not within normal limits.  Tr. 353-57.

However, regardless of whether the ALJ erred in finding Plaintiff's symptom claims were not corroborated by objective testing and physical examinations, it is well-settled in the Ninth Circuit that an ALJ may not discredit a

ORDER ~ 14

claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  As discussed in detail above, the two additional reasons given by the ALJ for discounting Plaintiff's symptom claims were legally insufficient.  Thus, because lack of corroboration by objective evidence cannot stand alone as a basis for a rejecting Plaintiff's symptom claims, the ALJ's finding is inadequate.

The Court concludes that the ALJ did not provide clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.  On remand, the ALJ must reconsider Plaintiff's symptom claims.

**B. Medical Opinions**

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s) . . ." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b).  The factors for evaluating

the persuasiveness of medical opinions and prior administrative medical findings

include supportability, consistency, relationship with the claimant (including

length of the treatment, frequency of examinations, purpose of the treatment,

extent of the treatment, and the existence of an examination), specialization, and

"other factors that tend to support or contradict a medical opinion or prior

administrative medical finding" (including, but not limited to, "evidence showing a

medical source has familiarity with the other evidence in the claim or an

understanding of our disability program's policies and evidentiary requirements").

20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore

the ALJ is required to explain how both factors were considered.  20 C.F.R. §§

404.1520c(b)(2), 416.920c(b)(2).  Supportability and consistency are explained in

the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence
> and supporting explanations presented by a medical source are to
> support his or her medical opinion(s) or prior administrative medical
> finding(s), the more persuasive the medical opinions or prior
> administrative medical finding(s) will be.

> (2) *Consistency.* The more consistent a medical opinion(s) or prior
> administrative medical finding(s) is with the evidence from other
> medical sources and nonmedical sources in the claim, the more
> persuasive the medical opinion(s) or prior administrative medical
> finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).  The ALJ may, but is not

required to, explain how the other factors were considered.  20 C.F.R. §§

ORDER ~ 16

404.1520c(b)(2), 416.920c(b)(2).[1]  However, when two or more medical opinions

or prior administrative findings "about the same issue are both equally well-

supported . . . and consistent with the record . . . but are not exactly the same," the

ALJ is required to explain how "the other most persuasive factors in paragraphs

_____

[1] Defendant argues that the standards articulated by Plaintiff for considering

medical opinion in cases filed on or after March 27, 2017, do not apply because

they are inconsistent with the new regulatory scheme.  ECF No. 17 at 15-16.  The

Court agrees with Defendant that "giv[ing] certain opinions greater weight than

others based entirely on the source of the opinion and impos[ing] a higher standard

for rejecting some opinions, [is] limited to cases governed by the old regulatory

scheme."  ECF No. 17 at 15.  However, the Court finds that resolution of whether

an ALJ is still required to provide specific and legitimate reasons for discounting a

contradicted opinion from a treating or examining physician is unnecessary to the

disposition of this case. "It remains to be seen whether the new regulations will

meaningfully change how the Ninth Circuit determines the adequacy of [an] ALJ's

reasoning and whether the Ninth Circuit will continue to require that an ALJ

provide 'clear and convincing' or 'specific and legitimate reasons' in the analysis

of medical opinions, or some variation of those standards."  *Gary T. v. Saul*, No.

EDCV 19-1066-KS, 2020 WL 3510871, at *3 (C.D. Cal. June 29,

2020) (citing *Patricia F. v. Saul*, No. C19-5590-MAT, 2020 WL 1812233, at *3

(W.D. Wash. Apr. 9, 2020)).

ORDER ~ 17

(c)(3) through (c)(5)" were considered.  20 C.F.R. §§ 404.1520c(b)(3),

416.920c(b)(3).

    *1. Johnathan Wilson, D.O.*

    In January 2019, Dr. Johnathan Wilson completed a medical report that

included diagnoses of chronic lower back pain and radiculopathy, and noted

symptoms of lower back pain, radiculopathy, sciatica, and tingling in both feet.  Tr.

396-98.  Dr. Wilson also noted that Plaintiff had the mental condition of PTSD,

which was "reasonably likely to cause pain."  Tr. 396.  Dr. Wilson opined that

Plaintiff would have to lie down or elevate legs during the day for fifteen to twenty

minutes at a time; his prognosis was "fair"; he was limited to sedentary work; he

was limited to frequent handling and reaching with both extremities; he would be

off task and unproductive over 30% of the week during a 40-hour workweek; and

if Plaintiff attempted to work a 40-hour per week schedule it is more probable than

not that he would miss four or more days per month.  Tr. 397-98.  The ALJ found

Dr. Wilson's opinion has little persuasive value for several reasons.  Tr. 27.

    First, the ALJ found that Dr. Wilson's "conclusory statement provided very

little explanation of the evidence relied on in forming his opinion.  Of significance,

Dr. Wilson's opinion is not sufficiently supported by his own treatment records

that generally note unremarkable neurological findings (e.g., motor strength was

5/5 throughout, reflexes, and sensation was normal)."  Tr. 27 (citing Tr. 369, 372).

However, as noted by Plaintiff, Dr. Wilson's notes also include observations of

difficulty rising from the chair and ambulating, stooped posture, limping gait,

ORDER ~ 18

anxious and agitated mood and affect, tenderness to palpation in lower back and neck, and decreased range of motion.  Tr. 368-70, 372.  Additionally, while not considered by the ALJ, Dr. Wilson supported his assessment with reference to lumbar MRI test results of L3-4 disc bulge and L5-S1 small disc protrusion.  Tr. 396.  Finally, the ALJ relied entirely on two of Dr. Wilson's treatment notes, and failed to evaluate the majority of Dr. Wilson's ongoing treatment notes between August 2016 and February 2018.  *See* Tr. 266-322.  For all of these reasons, the Court finds that the ALJ's analysis of supportability is not supported by substantial evidence.

Second, as to consistency, the ALJ found, without specific citation to the record, that Dr. Wilson's opinion is not consistent with Plaintiff's "high functioning activities of living."  Tr. 27.  However, as noted by Plaintiff, "the ALJ fails to identify inconsistencies between [Plaintiff's] daily activities and Dr. Wilson's assessed limitations."  ECF No. 16 at 10-11.  In particular, the ALJ fails to explain how work-related limitations opined by Dr. Wilson, including his inability to regularly complete a 40-hour workweek, and stay on task during a 40-hour workweek, is inconsistent with the acute injuries suffered by Plaintiff at sporadic points in the record.  *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (a court "cannot substitute [the court's] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions. Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the court] to meaningfully determine whether the ALJ's conclusions were supported by

ORDER ~ 19

substantial evidence.").  Further, the ALJ does not discuss the consistency between Dr. Wilson's opinion and any other medical and nonmedical sources in the record, as directed by the regulations.  20 C.F.R. § 416.920c(c)(2).  Based on the foregoing, the Court finds the ALJ's analysis of consistency, based solely on Plaintiff's sporadic and injury-inducing activities, is not supported by substantial evidence.

The Court therefore finds the ALJ failed to adequately evaluate Dr. Wilson's opinion in terms of consistency and supportability, as required by the regulations. This opinion must be properly reevaluated on remand.

2.  *John Arnold, Ph.D. and Luci Carstens, Ph.D.*

In August 2018, Dr. Arnold examined Plaintiff and diagnosed him with unspecified depressive disorder, unspecified personality disorder with antisocial, borderline, schizotypal features, and PTSD "features."  Tr. 354.  Dr. Arnold opined that Plaintiff had severe limitations in his ability to adapt to changes in a routine work setting; maintain appropriate behavior in a work setting; and complete a normal work day and work week without interruptions from psychologically based symptoms.  Tr. 354.  He also opined that Plaintiff had marked limitations in his ability to understand, remember, and persist in tasks by following detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; learn new tasks; be aware of normal hazards and take appropriate precautions; and communicate and perform effectively in a work setting.  Tr. 354.  Dr. Wilson noted

ORDER ~ 20

the overall severity of the combined impact of all of Plaintiff's diagnosed mental

impairments as "marked"; and he opined that Plaintiff would be impaired for

twelve months with available treatment.  Tr. 355.  The ALJ found Dr. Arnold's

opinion had no persuasive value.  Tr. 27.

First, as to supportability, the ALJ found that Dr. Arnold "conducted only a

cursory evaluation and his opinion consists of a check-box form with no

explanation to support the limitations opined.  Dr. Arnold appears to have relied on

the subjective report of symptoms and limitations provided by [Plaintiff], and

seemed to uncritically accept as true most, if not all, of what [Plaintiff] reported."

Tr. 27. The ALJ also noted that while "some abnormalities were noted during the

mental status exam (e.g., illogical speech, abnormal thought process and content),

the report also stated [that Plaintiff] gave vague/questionable responses at times."

Tr. 27.  Plaintiff argues that Dr. Arnold's findings are supported his clinical

interview and mental status examination, and cites Ninth Circuit case law

indicating that clinical interviews and mental status examinations are "objective

measures and cannot be discounted as 'self-report.'. . . [T]he rule allowing an ALJ

to reject opinions based on self-reports does not apply in the same manner to

opinions regarding mental illness. . . . Psychiatric evaluations may appear

subjective especially compared to evaluation in other medical fields.  Diagnoses

will always depend in part on the patient's self-report, as well as on the clinician's

observations of the patient."  ECF No. 16 at 12-13 (citing *Buck v. Berryhill*, 869

F.3d 1040, 1049 (9th Cir. 2017)). Here, Plaintiff argues, clinical findings and

ORDER ~ 21

mental status examination results provide support and explanation for the assessed

limitations, including: chronic active-independent interpersonal style, odd/peculiar

presentation and statements, reported mild perceptual anomalies, social paranoia,

illogical speech, magical thinking, vague/questionable responses, moderately

depressed mood and constricted affect, thought process and content not within

normal limits, memory not within normal limits, and insight and judgment not

within normal limits.  Tr. 353-57.  Defendant briefly argues that the ALJ

"reasonably inferred that Dr. Arnold relied on Plaintiff's subjective complaints,

instead of objective medical findings"; and in support of this finding Defendant

cited a single note by Dr. Arnold that "Plaintiff did not appear to be responding to

internal stimuli, but wrote that Plaintiff's thought process and content were not

within normal limits because he '[e]ndorsed hallucinations.'"  ECF No. 17 at 19

(citing Tr. 356).  However, irrespective of whether the ALJ properly considered the

supportability factor under the new regulations, Dr. Arnold's opinion must be

reconsidered on remand because the ALJ failed to properly consider the

consistency factor.

Regarding consistency, the ALJ found that Dr. Arnold's opinion is

inconsistent with the longitudinal medical record, "which shows [that Plaintiff] has

routinely denied symptoms of depression and anxiety to his primary care provider.

Furthermore, Dr. Arnold's opinion is not consistent with the unremarkable

neuropsychiatric findings in the longitudinal medical record."  Tr. 27-28 (citing Tr.

268-69, 272-73, 276, 280, 291, 296, 300).  Plaintiff argues that the same records

ORDER ~ 22

cited by the ALJ in support of this finding also describe Plaintiff's mood and affect as anxious and irritable; and notes "there are few neuropsychiatric findings in the record, [because] Dr. Arnold was the only mental health professional to examine [Plaintiff], while the totality of the treatment notes [cited by the ALJ] concern [Plaintiff's] physical complaints."  ECF No. 16 at 13-14 (citing Tr. 353-57).  Most notably, however, Plaintiff argues that the ALJ failed to address the opinion of agency reviewing psychologist, Dr. Luci Carstens.  ECF No. 16 at 14.  In August 2018, Dr. Carstens reviewed Dr. Arnold's medical report and found (1) Dr. Arnold's diagnoses of depressive disorder and personality disorder were supported by his clinical observations; (2) the severity ratings opined by Dr. Arnold were supported by the clinical evidence noted in Dr. Arnold's report; and (3) the impairment is expected to persist for 24 months, which is 12 months longer than the duration opined by Dr. Arnold.  Tr. 350-51.

Under the new regulations, the ALJ is directed that the more consistent a medical opinion is "with the evidence from other medical sources and nonmedical sources in the claim, them more persuasive the medical opinion . . . will be."  20 C.F.R. § 416.920c(c)(2).  Here, the ALJ failed to consider the consistency of Dr. Arnold's opinion with the reviewing medical opinion of Luci Carstens; nor did the ALJ consider the persuasiveness of Dr. Carsten's opinion under the new regulations.  *See* Tr. 27-28.  This was error.  Defendant argues that the ALJ was not required to consider Dr. Carsten's opinion because she "merely reviewed" Dr. Arnold's opinion, and under the new regulations "the agency utilizes a narrower

ORDER ~ 23

definition of what constitutes a medical opinion." ECF No. 17 at 20 (citing 20 C.F.R. § 416.913(a)(2) ("A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in [work activities].").

However, Dr. Carstens specifically opined in the narrative section of her reviewing opinion that the severity ratings assessed by Dr. Arnold regarding his ability to perform the mental demands of work activities, "on the functional limitations scale," are supported by clinical evidence. *See* Tr. 350; 20 C.F.R. § 416.913(a)(2)(i)(B). Defendant also contends that any error by the ALJ in considering Dr. Carstens' opinion is harmless "because the ALJ's reasons for finding Dr. Arnold's opinion unpersuasive would apply equally to Dr. Carstens' report, which at most summarized Dr. Arnold's report." ECF No. 17 at 20 (citing *Molina*, 674 F.3d at 1121-22 (ALJ's failure to properly weigh the statements of a lay witness can be held harmless when the witness's testimony was substantially the same as the claimant's and the ALJ provided legally sufficient reasons for finding the claimant less than fully credible)). This argument is unavailing because (1) in direct contrast to Dr. Arnold's opinion that Plaintiff's impairments would last for 12 months, Dr. Carstens opined that Plaintiff's impairments would last for 24 months; and (2) the new regulations still require the ALJ to consider the consistency of a medical opinion with evidence from other medical sources. *See* 20 C.F.R. § 416.920c(c)(2). For all of these reasons, the Court finds the ALJ's

analysis of consistency with regard to Dr. Arnold and Dr. Carstens' opinions fails to comply with the new regulations.

The ALJ failed to adequately evaluate Dr. Arnold and Dr. Carstens' opinions under the new regulations. These opinions must be properly reevaluated on remand.

## C. Additional Assignments of Error

Plaintiff additionally argues that the ALJ erred at step two by failing to properly consider Plaintiff's mental health impairments; erred at step three by "failing to conduct an adequate analysis" of whether Plaintiff's cervical and lumbar degenerative disease met or equaled Listing 1.04; and failed to conduct an adequate analysis at step five. ECF No. 16. Because the analysis of Plaintiff's mental health impairments and alleged back pain is dependent on the ALJ's reevaluation of Plaintiff's symptom claims, and the medical evidence, including the medical opinion evidence discussed above, the Court declines to address these challenges in detail here. On remand, the ALJ is instructed to reconsider Plaintiff's symptom claims, and the medical opinion evidence under the new regulations, and conduct a new sequential analysis, including a reassessment of the step five finding if necessary.

## REMEDY

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate

where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome[.]" *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

The Court finds that further administrative proceedings are appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). Here, the ALJ erred in considering Plaintiff's symptom claims, and medical opinions of Dr. Wilson, Dr. Arnold, and Dr. Carstens under the new regulations, which calls into question whether the assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by substantial evidence. "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is

ORDER ~ 26

inappropriate." *Treichler*, 775 F.3d at 1101. Instead, the Court remands this case for further proceedings. On remand, the ALJ must reconsider Plaintiff's symptom claims. The ALJ should also reconsider the medical opinion evidence, and provide legally sufficient reasons under the new regulations for evaluating the opinions, supported by substantial evidence. If necessary, the ALJ should order additional consultative examinations and, if appropriate, take additional testimony from a medical expert. Finally, the ALJ should reconsider steps the remaining steps in the sequential analysis, reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

**ACCORDINGLY, IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 16, is **GRANTED**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

2. Defendant's Motion for Summary Judgment, ECF No. 17, is **DENIED**.

3. Application for attorney fees may be filed by separate motion.

The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** July 22, 2021.

*s/ Rosanna Malouf Peterson*

ROSANNA MALOUF PETERSON
United States District Judge

ORDER ~ 27